UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRYL EDWARDS,

                  Plaintiff,

v.                                                 Case No. 22-cv-1455-pp

MILWAUKEE COUNTY
and MILWAUKEE COUNTY CORRECTIONS HEALTHCARE,
*also known as Wellpath*,

                  Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Darryl Edwards, who is incarcerated at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law while he was at the Milwaukee County Jail. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcearted when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 20, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $22. Dkt. No. 7. The court received that fee on February 2, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued Milwaukee County and Milwaukee County Corrections Healthcare, also known as Wellpath. Dkt. No. 1 at 1. He alleges that since he arrived at the Milwaukee County Jail on June 12, 2022, he has received inadequate treatment and care for gunshot wounds to his penis and inner left thigh. Id. at 2. When the plaintiff arrived at the jail, he allegedly had two catheters (one for his bladder and one for his penis) and a "foley bag" to aid in urinary functions. Id. The plaintiff allegedly spent his first two days at the

3

jail in the "booking room" where the "rude nurses" wouldn't assist him with his medical needs, which caused his urine to turn into blood in the foley bag. Id. He says that the nurses still didn't provide assistance, telling him to wait until the next shift nurse came on, "which was 6 hours later." Id.

Two days after arriving at the jail, the plaintiff moved to the medical unit pod. Id. at 3. He alleges that he showed the nurse the blood in his urine, and she told him to empty his bag and see what it looked like later. Id. at 3. Later, another nurse allegedly told him the blood was normal and would clear up soon. Id.

The plaintiff states that although the nurses in the medical unit pod were supposed to care for his wounds, he had to change and care for his wounds himself. Id. He allegedly told three nurses that his catheters had to come out in four weeks and that he should have an appointment coming up. Id. The plaintiff says that weeks passed and, after he started growing a knot around his bladder catheter, the nurses referred him to see the jail doctor. Id. Four days later, the doctor allegedly checked the plaintiff's vitals and asked to see the knot, but when she saw the dressing, she told the plaintiff not to remove it because she already knew how it looked and, instead, she gave him ointment that didn't work. Id. The plaintiff states he reminded the doctor that his catheter was supposed to come out within four weeks, and she replied that no appointment had been made yet. Id.

On July 25, 2022, the plaintiff's penis catheter allegedly came out by itself from the pressure buildup of being in too long. Id. He says he told the

4

night shift nurse, and she told him to wait until the morning and they would call the hospital to make an appointment. Id. The plaintiff states that daily he asked the nurses and "CO" if he was going to the hospital, and they kept saying he would go the next day, but that it was against "the policies to tell the inmates an actual date." Id.

On August 5, 2022, the plaintiff's bladder catheter allegedly stopped draining urine into the foley bag which "was a serious matter causing the plaintiff to have to urinate out of his penis which he wasn't ready for yet." Id. at 4. He says he told the nurse, who responded that if it didn't drain by the morning to let the morning nurse know right away. Id. The plaintiff allegedly told the morning nurse, who eventually tried to flush the catheter to see if it was clogged up. Id. About two hours later, the morning nurse checked on the plaintiff and, seeing no drainage, the plaintiff went to the hospital on August 6, 2022. Id.

At the hospital, staff allegedly collected a urine sample and gave the plaintiff a new bladder catheter. Id. Medical staff allegedly told the plaintiff he had a UTI because his catheters had been in for too long, and they gave him an antibiotic along with a ten-day prescription for antibiotics. Id. The plaintiff states that he returned to jail that evening. Id. He allegedly didn't receive another antibiotic medication until August 10, 2022, and jail staff told him it was not the antibiotic the doctor prescribed, but it was what they provide in the jail. Id. The plaintiff took the antibiotic for ten days. Id.

On August 26, 2022, a nurse allegedly collected a urine sample to check for infection. Id. The plaintiff says that four days later, he learned that he still had the UTI and the jail prescribed him a new antibiotic which he took until September 9, 2022. Id. After he finished the new antibiotic, jail staff took another urine sample on September 16, the plaintiff learned that he still had the UTI. Id. The plaintiff states that staff prescribed him another antibiotic, which he agreed to take even though the nurse told him that the side effects affected his "Achilles." Id. He says that on September 20, he complained that his heels burned and his body felt stiff, and the nurse said she would tell the doctor. Id. When the plaintiff didn't hear anything the next day, he allegedly called his lawyer "to tell him about everything that was happening and was seeing if the judge would let him (the plaintiff) have an emergency release so that he could get the right antibiotics that he needs to get better since the Milwaukee County Jail wouldn't provide it to him." Id.

The plaintiff alleges that on September 22, 2022, he was sent to the hospital to see if his bladder catheter should be removed, and it was. Id. He says that the next day, the nurse in the clinic told him it was the last day for his antibiotic and the plaintiff told her he might still need Tylenol for the stomach pains from the removal of the catheter and for soreness from his gunshot injuries. Id. at 5-6. On October 5, 2022, a nurse allegedly collected a urine sample. Id. at 6. The plaintiff says that on October 9 and 30, his pain medication was stopped without warning, so he had to fill out a request for more. Id. The plaintiff states that when his pain medication stops, his stomach

has sharp pains and burns on the inside. Id. at 6-7. The jail doctor allegedly told the plaintiff that she refilled his pain medication and asked what he wanted them to do for the stomach pain; the plaintiff asked if he could have any x-ray. Id. at 7. The plaintiff says that the doctor responded "No!" and when he asked for her name she said, "Noone here has to know my name." Id.

The plaintiff alleges that on November 4, 2022, staff collected another urine sample (he still hadn't received the results from his October 5 test) and six days later, they told him he still had the UTI. Id. The nurse allegedly told him he had to return to the hospital to see a specialist. Id. The plaintiff states that on November 11, staff collected another urine sample to make sure there wasn't an error. Id. He says that three days after that, a "white coat nurse practitioner" told him his UTI was worse, he should see a doctor and he should not have left the clinic without an antibiotic. Id. The plaintiff alleges that staff were not supposed to put him on any more antibiotics because three of them failed. Id. The plaintiff said that the pill they tried to give him was twice the dosage the doctor had recommended, and that they told him it could take a week or two for him to be seen at the hospital; he also says they were supposed to start his meds that night, but did not start until the next morning. Id.

The plaintiff claims that the defendants—Milwaukee County and Wellpath—failed to adequately address his medical care needs in violation of his constitutional rights. Id. at 9. He also claims that their actions amounted to negligence under Wisconsin state law. Id. The plaintiff claims that the lack of adequate treatment contributed to the violation of his Sixth Amendment rights

7

because he is a pretrial detainee and that the defendants' actions violated his right to equal protection. Id. at 9-10. For relief, the plaintiff seeks declaratory relief, injunctive relief, compensatory damages and punitive damages. Id.

   C.   Analysis

A §1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. Cty. of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue in the case. Id. (citing McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

The plaintiff's allegations that he received inadequate treatment for his gunshot wounds and catheters at the jail implicate his constitutional rights under the Fourteenth Amendment as well as rights under Wisconsin state law.[1]

---

[1] The plaintiff's allegations do not implicate his rights under the Sixth Amendment or his right to equal protection. The Sixth Amendment provides for a right to a speedy trial in criminal prosecutions, and such a claim is not usually appropriate in a §1983 case. Even if appropriate, it would not relate to the plaintiff's allegations regarding his medical care. And the plaintiff's

8

However, while the plaintiff references nurses and a doctor who allegedly knowingly failed to provide him with objectively reasonable care, he has not sued any individual defendants. The plaintiff *has* sued Milwaukee County and Wellpath. To proceed against a municipal entity like the county, or a contract employee of the county like Wellpath, the plaintiff must allege: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Waters v. City of Chi., 580 F.3d 575, 581 (7th Cir. 2009) (quoting Estate of Sims ex rel. Sims v. Cty. of Bureau, 506 F.3d 509, 515 (7th Cir. 2007)); Thomas v. Martija, 991 F.3d 763, 773 (7th Cir. 2021) (quoting Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017)). The complaint does not state a claim for relief that is plausible on its face because plaintiff has not pled facts that support a reasonable inference that a Milwaukee County and/or a Wellpath policy or custom deprived him of his constitutional rights. See McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 678).

The plaintiff's complaint appears to describe conduct by individual nurses and doctors at the jail, but he has not named any of these individuals as defendants. The complaint fails to state a claim for relief and the court will dismiss it. The court will give the plaintiff an opportunity to file an amended

---

complaint does not allege any action to suggest a violation of his right to equal protection.

complaint. The amended complaint must name as defendants the individuals whom the plaintiff believes failed to provide him with adequate medical care. If the plaintiff does not know the names of these individual defendants, he may call them John Doe or Jane Doe and give a brief description of their function (*e.g.*, "Jane Doe, morning nurse") and use discovery to identify their real names later.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b). (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

When writing his amended complaint, the plaintiff must provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal

language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by **August 4, 2023**. If the court receives an amended complaint by the end of the day on August 4, 2023, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive either an amended complaint or a request for more time to file one by the August 4, 2023 deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$328** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Dodge Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 11th day of May, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**