UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRYL EDWARDS,

      Plaintiff,

v.             Case No. 22-cv-1455-pp

MILWAUKEE COUNTY JAIL CLASSIFICATION STAFF,
MILWAUKEE COUNTY HEALTHCARE WELLPATH,
JANE DOE, *morning, noon, late night nurses,*
and JANE DOE, *5th floor nurse practitioner,*

      Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 12)**

  Darryl Edwards, who is incarcerated at Stanley Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law while he was at the Milwaukee County Jail. The court screened the complaint and found that it failed to state a claim. Dkt. No. 9 at 8-11. The court gave the plaintiff an opportunity to file an amended complaint, which he did. Dkt. No. 12. This order screens the amended complaint.

**I.  Screening the Amended Complaint**

  A.  <u>Federal Screening Standard</u>

  Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that
1

are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Amended Complaint's Allegations

The plaintiff has sued Milwaukee County Jail Classification Staff, Milwaukee County Healthcare Wellpath, "Jane Doe (morning, noon, late night nurses)" and Jane Doe "Nurse Practitioner," 5th floor. Dkt. No. 12 at 1. He alleges that when he arrived at the Milwaukee County Jail on June 12, 2022, he showed Jane Doe evening nurse his "urine that turned into blood inside [his] foley bag," but that she was "very rude" and said he would have to talk to the next shift about his concern. Id. at 2. The plaintiff states that he spent two days in the "booking room" with two catheters and that he was very uncomfortable and in pain. Id. Milwaukee County Jail Classification Staff allegedly failed to place the plaintiff in a secured area and he had to lie on a hard bench and slab for two days. Id. at 3.

The plaintiff alleges that the jail had a policy "to give out generic antibiotics to inmates with infections that didn't work from July-November having an ongoing UTI [presumably, urinary tract infection] that possibly could've affected [his] blood, killing [him]." Id. at 3-4. He says that Wellpath gave him the first antibiotic on August 10, 2022, four days after he received notice from the hospital of the infection. Id. at 4. The plaintiff states that he took the medication for ten days, they collected a urine sample on August 26, 2022, and on August 30, the results indicated that he still had the UTI. Id.

3

The plaintiff alleges that Wellpath gave him a second "pill" (presumably, antibiotic) that same day, which he took until September 9, 2022. Id. He says they collected a urine sample on September 12 and on September 16, and the results showed that he still had the UTI. Id.

The plaintiff alleges that September 16, Jane Doe "noon nurse on the 5th floor" told him to take a third antibiotic for the weekend "so that the infection bacteria wouldn't affect [his] blood, but the si[de] affects effects [his] achilles[.]" Id. at 4-5. The plaintiff says that he took the pill and on September 19, 2022, his heels burned and his body was stiff and ached so badly that he told the "noon nurse" Jane Doe; she told him she took notes and would get back to him. Id. at 5. The plaintiff states that he heard nothing back for hours so he called his attorney asked him to ask the judge for an emergency release so he could get the treatment he needed to get rid of the UTI "because of the Milwaukee County policy of giving [him] the wrong medication, but [he] was denied." Id. The plaintiff alleges that on September 23, 2022, he finished that antibiotic, received a urine sample on October 5 and on October 31, 2022, "put in a pink & white slip because [he] ha[dn't] received [his] urine sample results yet." Id. at 5-6. The plaintiff alleges that Milwaukee County Jail's Wellpath failed to keep up with his urine samples from October 5, 2022 through November 4, 2022. Id. at 3. On November 4, 2022, "they" allegedly gave him another urine sample and on November 10, the clinic told him the UTI was still in his body. Id. at 6. The plaintiff says that they also said that "it got[] wors[e]

4

and [he] needed to see a specialist at the hospital which would take a week or two to be seen, so she put [him] on a fourth antibiotic[.]" Id.

The plaintiff alleges that the fourth antibiotic was "a double dosage until [he] went to the hospital for the third time which was 4 days later." Id. at 6. He says that he finished that antibiotic after ten days and the infection finally cleared. Id. The plaintiff states that the "neglect on following up with the urine tests made [him] file a civil rights suit." Id. at 6-7. He says that he should not have had that infection for almost five months untreated and that certain medication made it worse because of Milwaukee County's policy to use generic antibiotics that don't work or help incarcerated individuals with these types of infections. Id. at 7.

In addition to his allegations regarding the antibiotics, the plaintiff alleges that from June 15 through August 5, 2022, Jane Doe "morning, noon evening nurses" "never checked to make sure [he] was healing correctly from [his] gunshot injuries, not making sure no infections w[ere] there, only providing supplies so [he] could care for [his] own wounds." Id. He says that on August 6, 2022, a nurse named Mrs. Brown checked him out (the only nurse who did so) and made sure he went to the hospital. Id.

The plaintiff alleges that on July 25, 2022, the catheter in his penis came out on its own due to the pressure build-up and the catheter being in too long. Id. at 8. He states that he reported it to the Jane Doe "late night nurse" but she didn't check on him to make sure nothing was damaged. Id. The plaintiff says that she just said she would take notes and give them to the jail doctor the

5

next day "and [he] was forced to urinate out of [his] damaged penis until [he] got an appointment to the hospital." Id.

The plaintiff seeks injunctive relief. He says he "would like for some of the policies to change as far as inmates with injuries being properly cared for instead of being treated inhumane because of mistakes they've made to end up in jail." Id. at 9. He also states that the jail should be able to provide antibiotic medications prescribed by a hospital "so that no other human being ha[s] to go months and months with a[] deadly infection uncured, because of their policy." Id.

C.  Analysis

A §1983 claim that a state pretrial detainee has received inadequate medical care is based on the rights secured by the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. County of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue. Id. (citing McCann v. Ogle County, Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

6

To proceed against a municipal entity like the county, or a contract employee of the county like Wellpath, the plaintiff must allege: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Waters v. City of Chicago, 580 F.3d 575, 581 (7th Cir. 2009) (quoting Estate of Sims *ex rel.* Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007)); Thomas v. Martija, 991 F.3d 763, 773 (7th Cir. 2021) (quoting Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017)).

The plaintiff has alleged that, because of jail policy, he was given ineffective medication for his UTIs and as a result, he suffered from recurring UTIs for months. Construed liberally, the plaintiff's allegations state a claim against "Milwaukee County Healthcare Wellpath" based on its medication policy regarding the antibiotics. But Milwaukee County and Wellpath are separate entities; Wellpath is the company with which Milwaukee County contracts to provide medical services at the jail. It is not the entity that has the policy. The court will direct the clerk to modify the docket so that the plaintiff can proceed against Milwaukee County *and* Wellpath.

The plaintiff also has alleged that nurses did not help him when he had his infections. At this stage, the plaintiff may proceed against Jane Doe "noon nurse on the 5th floor" based on allegations that on September 19, 2022, she didn't help him when he told her about the side effects he was experiencing

7

from the third round of antibiotics. The plaintiff also may proceed on a claim based on allegations that Wellpath failed to keep up with his urine samples from October 5, 2022 through November 4, 2022, and that when his urine was finally tested, "they" said the infection had gotten so bad that he needed to see a specialist. The plaintiff has not identified the person or persons responsible for this delay; the court will allow him to proceed on this claim against Jane Doe nurse defendants. The court also will allow the plaintiff to proceed on a medical care claim against Jane Doe "morning, noon, evening nurses" based on allegations that between June 15 and August 5, 2022, the nurses never checked to make sure he was healing from his gunshot wounds and to make sure he did not have any infections.

The plaintiff has not stated a claim against the Jane Doe evening nurse for being rude to him in the booking area. And to the extent that the plaintiff wants to proceed on a claim against Milwaukee County Jail Classification Staff for being forced to stay in an uncomfortable setting in the booking area for two days when he first arrived at the jail, such a claim would not be related to the medical care antibiotic claim the plaintiff raises in this case. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). The plaintiff may not proceed on such a claim in this case; if he wants to pursue that claim, he must bring a separate lawsuit.

The plaintiff will need to use discovery to identify the Doe defendants. Once the named defendants (Milwaukee County and Wellpath) have answered the complaint, the court will set deadlines for the parties to complete discovery

8

and file dispositive motions. At that time, the plaintiff may conduct discovery to learn the names of the Doe defendants.

Finally, the plaintiff seeks only injunctive relief to change policies and procedures at the jail. Because the plaintiff is no longer confined at the Milwaukee County Jail, he likely cannot obtain the relief he seeks, which means his claims may be moot. See Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009). Nothing in this order prevents defendants from seeking dismissal of the case on mootness or other grounds.

## II. Conclusion

The court **ORDERS** that defendant Milwaukee County Jail Classification Staff is **DISMISSED**.

The court **DIRECTS** the clerk to modify the docket to **TERMINATE** defendant Milwaukee County Healthcare Wellpath and add as defendants (1) Milwaukee County and (2) Wellpath.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the amended complaint (Dkt. No. 12) and this order to Milwaukee County for service on defendants Milwaukee County and Wellpath. Under the informal service agreement, the court **ORDERS** these defendants to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

9

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are not incarcerated or who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 13th day of December, 2023.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**